IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

K.J., a minor, by and through her mother
CARAN BRAUN,

                                                                     OPINION AND ORDER

                    Plaintiff,

                                                                      11-cv-622-bbc

     v.

SAUK PRAIRIE SCHOOL DISTRICT
and TED HARTER, in his official capacity
as principal of Sauk Prairie Middle School,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This case raises questions about the rights of middle school students to express themselves and the authority of middle school administrators to ban expression they view as inappropriate for middle school students. Plaintiff K.J. attends the Sauk Prairie Middle School. She has moved for a preliminary injunction preventing defendants Sauk Prairie School District and Ted Harter from prohibiting middle school students from wearing bracelets and other clothing containing the statement "I ♥ Boobies! (Keep A Breast)." Plaintiff contends that the ban violates her right to free speech under the First Amendment. Defendants contend that <u>Bethel School District No. 43 v. Fraser</u>, 478 U.S. 675 (1986),

1

authorizes them to ban this phrase because it is "lewd," "vulgar," "indecent" and "offensive." Both sides have plausible positions on the issue. However, when I take into consideration the ages of middle school students and the nature of the challenged expression, which can reasonably be interpreted as vulgar, I conclude that plaintiff has not demonstrated that she is likely to succeed on the merits. Therefore, I will deny her motion for preliminary injunction.

From the parties' affidavits submitted in support of this motion, I find the following facts.

## FACTS

Plaintiff K.J. is a thirteen-year-old female. She attended Sauk Prairie Middle School as a seventh grade student during the 2010-2011 school year and is now in the eighth grade. Plaintiff's mother, Caran Braun, brought this lawsuit on plaintiff's behalf. Defendant Sauk Prairie School District is a municipal school district, governed and operated by a municipal school board. Defendant Ted Harter is the principal of the Sauk Prairie Middle School, a school within the Sauk Prairie School District.

In early fall 2010, plaintiff purchased a bracelet bearing the phrase "I ♥ Boobies! (Keep a Breast)" with her mother's permission. These bracelets are developed and distributed by Keep A Breast Foundation, a breast cancer awareness foundation whose

mission is "to help to eradicate breast cancer by exposing young people to methods of prevention, early detection and support." The foundation seeks to increase breast cancer awareness among young people, so they are "better equipped to make choices and develop habits that will benefit their long-term health and well-being." The "I ♥ Boobies! (Keep a Breast)" bracelets are part of the foundation's larger "I Love Boobies! Campaign" which "relates to young people in their own voice about a subject that is often scary and taboo and turns it into something positive and upbeat." The campaign encourages people to use the bracelets as an opportunity to start a conversation about breast cancer prevention, body image, early detection and living a healthy lifestyle.

Plaintiff wants to wear the bracelet at school to show her concern about breast cancer and help raise awareness of breast cancer and prevention. For most of the first semester of the 2010-2011 school year, plaintiff and many other students wore the "I ♥ Boobies! (Keep a Breast)" bracelets at Sauk Prairie Middle School. The bracelets caused no disruption to school operations or classes or any disruptions outside school. By wearing her bracelet, plaintiff sparked conversations about breast cancer that have raised awareness in others about breast cancer and prevention and made her more aware of the disease and how it has affected others in her community.

Near the start of the second semester of the 2010-2011 school year, defendant Harter announced in his role as principal that students at Sauk Prairie Middle School would no

3

longer be allowed to wear the "I ♥ Boobies! (Keep a Breast)" bracelets. He told plaintiff that if she continued to wear her bracelet to school, she would be punished with detentions and then suspensions. Several days after the ban was announced, the restriction was altered to permit students to wear the bracelets inside out so that the message was not visually displayed. This restriction remains in place. Sometime after banning the bracelets, the middle school began selling their own bracelets for students to wear at school which state, "Sauk Prairie Eagles support breast cancer awareness." Sauk Prarie High School has not adopted a similar ban.

Defendant Harter concluded that "I ♥ Boobies! (Keep a Breast)" was sexual innuendo in violation of the dress code. He believes the bracelets elicit attention by sexualizing the cause of breast cancer awareness. After the middle school banned the bracelets, he told students and parents that the bracelets were a "distraction, that it was inappropriate slang, and that other people, including some teachers, were offended." In a newspaper article, he was quoted as saying "Our school dress code refers to any kind of dress that might be distracting or inappropriate for middle school." He also said that parents and teachers told him that they believed the slogan was inappropriate and "trivialized the disease."

OPINION

The analysis of a motion for preliminary injunction has two phases. <u>Girl Scouts of</u>

Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc., 549 F.3d 1079, 1085-86 (7th Cir. 2008).  First, in the threshold phase, plaintiff must establish that (1) she has a likelihood of success on the merits; (2) denial of relief would result in irreparable harm to her in the interim prior to the resolution of her claims; and (3) traditional legal remedies are inadequate to remedy the harm.  Id.  Although plaintiff must show some likelihood of success on the merits, the threshold is low.  Michigan v. U.S. Army Corps of Engineers, No. 10-3891, 2011 WL 3836457 at 15-16 (7th Cir. Aug. 24, 2011) ("likelihood of success" is not same thing as "success"); Brunswick Corp. v. Jones, 784 F.2d 271, 274-75 (7th Cir. 1986).  As for irreparable harm, "[t]he Supreme Court believes that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" Nuxoll v. Indian Prairie School District # 204 , 523 F.3d 668, 669-70 (7th Cir. 2008) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality opinion)).

If plaintiff makes this showing, then the court proceeds to the balancing phase, in which it weighs the gravity of the harm to plaintiff against any irreparable harm to defendant and considers the effects of granting or denying the injunction on the public interest.  Girl Scouts of Manitou Council, 549 F.3d at 1086.  In an attempt to minimize the harm from potential error, the court employs a "sliding-scale approach," which means that the higher the probability that plaintiff will win, the less heavily the balance of harms must weigh in favor of granting the injunction.  Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6,

5

12 (7th Cir. 1992).

A. Speech in Schools

Students retain their constitutional right to freedom of speech while at school, but those rights must be "applied in light of the special characteristics of the school environment." Tinker v. Des Moines, 393 U.S. 503, 506 (1969). Determining the contours of these rights is not a simple matter despite the Supreme Court's identification of several legitimate reasons for schools to restrict student speech. Id. at 514 (speech that school officials reasonably conclude is likely to cause substantial disruption); Hazelwood School District v. Kuhlmeier, 484 U.S. 260, 271 (1988) (speech that "the public might reasonably perceive to bear the imprimatur of the school"); Morse v. Frederick, 551 U.S. 393, 396 (2007) (speech that school officials reasonably interpret as advocacy of illegal drug use). For the purpose of this motion, defendants have argued only that the language on the bracelets falls within the Supreme Court's ruling in Bethel School District No. 43 v. Fraser, 478 U.S. 675, 680 (1986), that school officials may prohibit students from using certain lewd, vulgar or offensive terms at school regardless whether the speech causes a substantial disruption.

Fraser involved a speech given by a high school student in connection with student body elections that consisted entirely of "an elaborate, graphic, and explicit sexual

6

metaphor." Id. at 678. Without using any obscene or profane terms, the student described an erection, sexual intercourse and ejaculation. Id. at 687 (Brennan, J., concurring) (quoting the text of the speech). The lewd nature of the speech was apparent to its listeners and it induced other students to simulate its sexual allusions with lewd gestures. Id. at 678. The Court concluded that the speech glorified male sexuality, was "acutely insulting" to teenage female students and could have been "seriously damaging to its less mature audience, many of whom were only 14 years old and on the threshold of awareness of human sexuality." Id. at 683. The Court reasoned that "schools must teach by example the shared values of a civilized social order" and, "as instruments of the state, may determine that the essential lessons of civil, mature conduct cannot be conveyed in a school that tolerates lewd, indecent, or offensive speech and conduct such as that indulged in by this confused boy." Id. at 683. The Court concluded that "petitioner School District acted entirely within its permissible authority in imposing sanctions upon Fraser in response to his offensively lewd and indecent speech." Id. at 685.

    As the Supreme Court later noted, "the mode of analysis employed in Fraser is not entirely clear." Morse v. Frederick, 551 U.S. 393, 404-05 (2007). In particular, Fraser is unclear about (1) the scope of its exception and (2) the standard of review. In the course of the opinion in Fraser, the Court used a variety of adjectives to identify the category of speech that a school may prohibit, describing it variously as "sexually explicit," "vulgar,"

7

"lewd," "offensively lewd," "indecent," "highly offensive," "plainly offensive," "offensive" and "inappropriate." Fraser, 478 U.S. at 683-85. It is fair to say that the Court's concern was the sexual innuendo and its setting. The student's speech was vulgar, offensive and inappropriate because of its lewd sexual content and lack of meaningful expression and because the student spoke at a school assembly. Morse, 551 U.S. at 404 (stating that in Fraser, "Court was plainly attuned to the content of [the student's] speech").

Lewd and indecent sexual innuendo is one way that speech may be vulgar, offensive or inappropriate, but not the only one. The word "vulgar" is ambiguous, with senses ranging from "common" and "plebeian," to "lacking in cultivation" and "morally crude" to "offensive in language" and "lewdly or profanely indecent." Merriam Webster's Collegiate Dictionary 1326 (10th ed. 1997). Speech may be offensive or inappropriate for any number of reasons. Presumably, the majority in Fraser was aware of these differences, especially in light of Justice Brennan's concurrence in the judgment, pointing out the variety of adjectives used in the majority opinion. Fraser, 478 U.S. at 687-90 (Brennan, J., concurring in judgment). It remains unclear just how far schools may go to regulate speech that is not sexually explicit, lewd or indecent but is nevertheless vulgar, offensive or inappropriate.

In its latest school speech case, Morse v. Frederick, 551 U.S. 393 (2007), the Supreme Court cautioned against a broad reading of a school's right to punish offensive speech, while acknowledging that "[s]tudent First Amendment rights 'are applied in light of

8

the special characteristics of the school environment.'" Id. at 406 n.2 (citing Tinker, 393 U.S. 736; Fraser, 478 U.S. at 688 (Brennan, J. concurring); Kuhlmeier, 484 U.S. 260, 273 (1988)). School officials had punished a high school student for displaying a banner at a school event with the slogan "Bong Hits 4 Jesus," words that some might find offensive. The Court held that schools may prohibit advocacy of illegal drug use but it declined expressly to adopt the broader rule that schools may punish any speech that "is plainly 'offensive' as that term is used in Fraser." Morse, 551 U.S. at 409. Such a rule "stretches Fraser too far; that case should not be read to encompass any speech that could fit under some definition of 'offensive.' After all, much political and religious speech might be perceived as offensive to some." Id. In a concurring opinion, Justice Alito criticized the government for arguing that officials may "censor any student speech that interferes with a school's 'educational mission'" because schools officials may define "their educational mission as including the inculcation of whatever political and social views are held by these groups." Id. at 423 (citations omitted). Contra Boroff v. Van Wert City Board of Education, 220 F.3d 465, 470 (6th Cir. 2000) (upholding school's decision to punish student for wearing Marilyn Manson t-shirt, because it was not "manifestly unreasonable" for officials to conclude that Manson "promotes values patently contrary to the school's educational mission").

 The Court of Appeals for the Seventh Circuit has not considered the meaning of "lewd," "vulgar" or "offensive" language under Fraser. However, before Morse was decided

9

in 2007, several other circuit courts had tried to determine whether depictions of drug use qualified as "vulgar," "offensive" or "plainly offensive" speech under Fraser. E.g. Guiles v. Marineau, 461 F.3d 320, 327-29 (2d Cir. 2006). In Guiles, the issue was whether a student could be forbidden from participating in a school field trip while wearing a t-shirt depicting President George W. Bush, a martini glass, a razor blade and lines of cocaine, among other things. The court of appeals held that the plaintiff had a right to wear the shirt because the shirt was not school-sponsored, the language used was neither vulgar, lewd, indecent nor plainly offensive under Fraser and the school had not shown that the shirt's language would materially and substantially disrupt class work and discipline in the school. The court was not persuaded that the images of drugs and alcohol justified a ban on the shirt.

After Morse, it is unlikely that this conclusion about a t-shirt picturing cocaine would stand up, but the discussion of "offensive" speech in Guiles is persuasive. The court found that "[l]ewdness, vulgarity, and indecency normally connote sexual innuendo or profanity," id. at 327 (citations omitted), and that Fraser's reference to "plainly offensive" speech meant "speech that is something less than obscene but related to that concept, that is to say, speech containing sexual innuendo and profanity." Id. at 328. See also Saxe v. State College Area School District, 240 F.3d 200, 213 (3d Cir. 2001) ("Fraser permits a school to prohibit words that 'offend for the same reasons that obscenity offends.'"). In support of its restrictive interpretation of "offensive," the court of appeals noted that the precedents cited

10

in Fraser all concerned vulgarity, obscenity or profanity. Fraser, 478 U.S. at 684-85, citing FCC v. Pacifica Foundation, 438 U.S. 726, 745-48 (1978) (obscenity and profanity in public broadcasting); Ginsberg v. New York, 390 U.S. 629, 639-41 (1968) (selling sexually explicit material to children). In addition, in Fraser, the Court used the word "offensive" only in conjunction with "lewd," "vulgar" or "indecent," so it should be understood as "part and parcel of speech that is lewd, vulgar, and indecent." Guiles, 461 F.3d at 328.

I conclude that Fraser permits schools to prohibit vulgar or offensive speech that is related to, but falls just short of being, profane, obscene or indecent. It remains to be determined what standard of review courts should apply when reviewing a school district's determination that language is lewd or vulgar.

In Fraser, the Court stated that "[t]he determination of what manner of speech in the classroom or in school assembly is inappropriate properly rests with the school board." Id. at 683. That statement cannot be literally true. If it were, school officials would have been acting within their discretion when they decided that Tinker's anti-war armband or Morse's "Bong Hits 4 Jesus" banner was offensive or inappropriate. Nevertheless, the Supreme Court has taken the position that courts should show deference to judgments by school administrators about the propriety of putatively lewd or vulgar speech. The Court expressed a similar need for deference to school administrators' determinations that speech constituted advocacy of drug use and applied that deference when it adopted a rule in Morse that

11

permits school officials to restrict speech that is "reasonably viewed as promoting illegal drug use." Morse, 551 U.S. at 403.

Although the Court of Appeals for the Seventh Circuit has not addressed the issue of the standard of review for cases involving vulgar or offensive speech in school, its student speech opinions reveal a guarded deference for the decisions of school officials that accommodates the difficulty of their educational task. For example, when considering the scope of primary school students' free speech rights, the court wrote:

> An education in manners and morals cannot be reduced to a simple formula, nor can all that is uncivil be precisely defined . . . If the schools are to perform their traditional function of "inculcat[ing] the habits and manners of civility," Fraser, 478 U.S. at 681, they must be allowed the space and discretion to deal with the nuances. The touchtone is reasonableness . . . .

Muller v. Muller by Jefferson Lighthouse School, 98 F.3d at 1542 (7th Cir. 1996) (holding that school may screen non-school related handouts for potentially offensive messages). The court of appeals encourages deference to reasonable decisions of school administrators but it does not treat those decisions as immune from judicial scrutiny. For example, in Nuxoll v. Indian Prairie School District # 204, 523 F.3d 668 (7th Cir. 2008), a high school used a rule against "demeaning or "derogatory" statements to prohibit students from wearing t-shirts with the phrase "Be Happy, Not Gay." The district court denied the plaintiff's motion for a preliminary injunction; the court of appeals reversed the lower court on the ground that

12

the school had not offered sufficient evidence that the shirts would substantially disrupt the learning environment.  Id. at 676.  Although the court of appeals expressed support for a "judicial policy of hands off (within reason) school regulation of student speech," it adopted a standard of review that required defendants to "present[] facts which might reasonably lead school officials to forecast substantial disruption." Id. at 673.  The court upheld the school district's authority to prohibit derogatory or demeaning comments but rejected its determination that the phrase "Be Happy, Not Gay" was demeaning of homosexuals.  It found it "highly speculative" that the shirts would provoke harassment of homosexuals or "poison the educational atmosphere," as the school district had asserted.  Id. at 676.

Because reasonableness standards have been applied to the other school speech exceptions, I conclude that school officials violate the First Amendment by prohibiting expression that they determine is lewd or vulgar only if their determination is unreasonable. A reasonableness standard permits judicial scrutiny to protect students' First Amendment rights while preventing courts from interfering with the ability of administrators to manage their schools to promote a civil and mature discourse.

### B. "I ♥ Boobies! (Keep A Breast)"

The statement "I ♥ Boobies! (Keep A Breast)" straddles the line between vulgar and mildly inappropriate.  "Boobies" is a morally immature and crude term for breasts.  Merriam

13

Webster's Collegiate Dictionary 1326 (10th ed. 1997) defines "booby" as "BREAST – sometimes considered vulgar." Id. at 131. Although it is a far cry from the extended metaphor for sexual intercourse in Fraser, the phrase "I ♥ Boobies!" is sexual innuendo that is vulgar, at least in the context of a middle school. If the bracelets included only this phrase, this would be an easy case.

However, as plaintiffs argue, the phrase "I ♥ Boobies!" is always accompanied by the phrase "(Keep A Breast)." When one reads the entire phrase, it is clearly a message designed to promote breast cancer awareness. Unlike the students in Fraser or Morse, plaintiff is expressing a meaningful idea in a provocative manner. The effectiveness of her bracelet at provoking attention is evident when it is contrasted with the official sanitized version: "Sauk Prairie Eagles support breast cancer awareness." Plaintiff maintains that the bracelets express a positive social message using "contemporary language that [middle school] students can identify with" and that "appeal[s] to young women's sense of fun." Plt.s' Br., dkt. #6, at 13.

In support of her argument that the "I ♥ Boobies (Keep A Breast)" bracelets cannot reasonably be interpreted as vulgar, plaintiff cites H. v. Easton Area School District, No. 10–6283,___F. Supp.2d___, 2011 WL 1376141 (E.D. Pa. April 12, 2011). In Easton, the district court granted the plaintiff a preliminary injunction prohibiting the school district from enforcing a ban against the same "I ♥ Boobies (Keep A Breast)" bracelets in its middle

14

school. After explaining its understanding of Fraser, the court found that the "bracelets cannot reasonably be considered lewd or vulgar" because they "are intended to be and they can reasonably be viewed as speech designed to raise awareness of breast cancer and to reduce stigma associated with openly discussing breast health." Id. at *1. In rejecting the school district's argument that the bracelets use vulgar language and a double entendre, the court reasoned that the phrase "I ♥ [something]" has no inherent sexual connotations, and the phrase "I ♥ Boobies!" is not "gratuitous" but "chosen to enhance the effectiveness of the communication to the target audience." Id. at *11.

With respect, I disagree with the court's conclusion in Easton. The connotation of the expression "I ♥ Boobies!" cannot be determined by analyzing the explicit meaning of its constituent parts. The phrase "I ♥ [something]" or the word "boobies" may not have inherent sexual connotations, but the phrase "I ♥ Boobies!" does, especially in the middle school context. The campaign uses these hints of vulgarity and sexuality to attract attention and provoke conversation, a ploy that is effective for its target audience of immature middle students.

Although the bracelets promote a worthy cause, that does not make their slogan innocuous. Lewd and vulgar language can be an effective means to attract attention. When a person is speaking in a public forum, the First Amendment protects her freedom to choose words that convey the cognitive and its emotive content of her message, even if the words

15

are vulgar or offensive. Cohen v. California, 403 U.S. 15, 26 (1971). However, a student's freedom to select her preferred "mode of expression" within the school is more limited. Fraser, 478 U.S. at 684. School officials have a responsibility to "demonstrate the appropriate form of civil discourse and political expression" and to impart the "essential lessons of civil, mature conduct." Id. at 683. Although the defendants in Cohen and Tinker were both expressing anti-war messages, "[t]he First Amendment gives a high school student the classroom right to wear Tinker's armband, but not Cohen's jacket." Id. (quoting Thomas v. Granville Central School District, 607 F.2d 1043, 1057 (2d Cir. 1979) (Newman, J., concurring)).

Several district courts have held, after bench trials, that school officials did not violate a student's free speech rights by punishing her for making positive social statements in terms that could be reasonably interpreted as vulgar. In Broussard v. School Board of Norfolk, 801 F. Supp. 1526, 1537 (E. D. Va. 1992), the district court found that school officials did not violate the rights of a seventh grade student by punishing her for wearing a t-shirt with the slogan "Drugs Suck." The court found that school officials concluded reasonably that the term "suck" had sexual connotations that were vulgar and offensive, despite the shirt's anti-drug message and despite arguments by plaintiff's etymology expert that young people would understand the shirt as a generic message that "drugs are bad." Id. at 1533-34. Similarly, in Pyle v. South Haldey School Community, 861 F. Supp. 157 (D. Mass. 1993), the court

16

found that school officials determined reasonably that the word "dick" is vulgar when used on a t-shirt that said "See Dick Drink. See Dick Drive. See Dick Die. Don't be a Dick." Although the plaintiff argued that the message against drunk driving should be protected, the court concluded that "[a]t least in high school, a political message does not justify a vulgar medium." Id. at 169.

Plaintiff's bracelet uses a vulgar and sexually provocative statement to draw attention to a worthy social cause. The degree of vulgarity and innuendo in these bracelets is relatively innocuous, compared to the other influences that 11, 12 and 13-year-olds confront in school hallways and beyond the school walls. However, this case is not about whether I would adopt the same policy as defendants if I were a principal or a school board member. It is reasonable for school officials to conclude that this phrase is vulgar and inconsistent with their goal of fostering respectful discourse by encouraging students to use "correct anatomical terminology" for human body parts.

A question remains, however, whether this is the actual reason for defendants' ban on the bracelets. In the abstract, a practice prohibiting mildly vulgar language may be an appropriate way to teach middle school students the "fundamental values of public discourse" and to "inculcate the habits and manners of civility." Fraser, 478 U.S. at 683, 681. However, defendants' assertion that they follow such a practice relies entirely on unsubstantiated statements by defendant Harter. The principal is an authority on school

17

practices, but he identified no other instances in which the school banned similarly vulgar slang or disciplined a student for similar using a similar type of vulgar slang. Defendant Harter also told a local newspaper that parents and teachers had complained because they thought the phrase was inappropriate or trivialized breast cancer. Public school officials do not have broad discretion to ban any language they deem inappropriate or trivializing. The most damaging evidence for the middle school's putative "practice" is that defendants permitted students to wear the bracelets for an entire semester. The language was equally vulgar when students first began wearing the bracelets.

However, this is not a case in which the defendants' putative reasons might mask viewpoint discrimination. The reason that the bracelets are potentially offensive, trivializing or inappropriate is that they use vulgar language and sexual innuendo. Defendants did not restrict plaintiff's message and, in fact, made efforts to provide alternative means for her and her fellow students to express their message of breast cancer awareness. They made efforts to tailor their speech regulations to the age and maturity level of their students by not banning the bracelets in the high school. Zamecnik v. Indian Prairie School District, 636 F.3d 874, 876 (7th Cir. 2011) ("[T]he younger the children, the more latitude the school authorities have in limiting expression."). Concern about the age-appropriateness of speech is particularly relevant in matters of human sexuality, especially in a middle school atmosphere. It is likely that defendants determined reasonably that the phrase "I ♥ Boobies!

18

(Keep A Breast)" involved sexual innuendo that was vulgar within the meaning of Fraser.

As District Judge Ponsor wrote when denying the preliminary injunction in Pyle, the "See Dick Drink" case:

> If a school committee and administration decide to limit clothing with sexually provocative slogans, and diffuse somewhat an already highly charged atmosphere, in order to protect students and enhance the educational environment—even where the specific items banned may be relatively innocuous in today's world—the court is unlikely to conclude that this action violates the First Amendment.

Pyle v. South Hadley School Committee, 824 F. Supp. 7, 11 (D. Mass. 1993). I conclude that it is unlikely that plaintiff can show that it was unreasonable for defendants to determine that the phrase "I ♥ Boobies! (Keep A Breast)" is vulgar. Because she has not made the threshold showing that she is likely to succeed on the merits, it is unnecessary to discuss the other factors that must be present before a preliminary injunction may issue. Girl Scouts of Manitou Council, 549 F.3d at 1086.

ORDER

IT IS ORDERED that plaintiff K.J.'s motion for preliminary injunction, dkt. #5, is DENIED.

Entered this 6th day of February 2012.

                                      BY THE COURT:
                                      /s/
                                      BARBARA B. CRABB
                                      District Judge